[Crim. No. 675. In Bank. — February 26, 1901.]

## THE PEOPLE, Respondent, v. THOMAS F. GRIMES, Appellant.

CRIMINAL LAW — MURDER — JUSTIFICATION — SUPPORT OF VERDICT. — Where, upon a trial for murder, the killing was not questioned, but was sought to be justified on the ground of self-defense, under a reasonable apprehension that the defendant was in danger of being shot by the deceased, and also on the ground that the killing was necessary to prevent a robbery by the deceased, in taking defendant's money from a card-table, where there is sufficient evidence of guilt to warrant the jury in finding against both of these defenses, a verdict of conviction will not be disturbed for insufficiency of the evidence.

ID. — SELF-DEFENSE — TAKING MONEY FROM CARD-TABLE — INSTRUCTIONS — JURY NOT MISLED. — Where the court had fully instructed the jury, not unfavorably to the defendant, touching the claim of self-defense on the ground of apparent danger, other instructions, in relation to the right of defendant to kill to prevent the attempted commission of a felony, or to prevent escape with the proceeds of a felony, but stating that "if the attempt or commission would only amount to a misdemeanor, then the defendant had no such right," and that "a homicide committed in endeavoring to restrain the commission of a mere misdemeanor is not justifiable under the law," could not mislead the jury to understand them as referring to the right of self-defense against an assault upon the person; but the jury would reasonably understand them as referring to the taking and keeping of the money from the card-table, which the defendant claimed was a robbery.

ID. — UNFAIR TREATMENT IN GAME OF CARDS — KILLING NOT JUSTIFIED. — The fact that the deceased may have treated the defendant unfairly and unjustly in the matter of a game of cards, and took and kept the money because accusing the defendant unjustly of having had an extra card in his hand when it was dealt, could not give the defendant legal excuse or justification for taking the life of the deceased.

ID. — EVIDENCE — HABIT OF DECEASED — REBUTTAL PROVED IN CHIEF. — Where the defendant claimed that he believed he was in danger of being shot, because the deceased had his hand upon his hip-pocket when shot, and offered evidence to show that deceased had been seen with a pistol, evidence of an intimate acquaintance of the deceased, that he had never known him to carry a pistol, and that it was his peculiar custom to rest his hand on his hip or in his hip-pocket, was admissible in rebuttal; and the fact that such rebutting evidence was proved in chief could not be disadvantageous to the defendant nor constitute ground for reversal.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial.   J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

F. P. Tuttle, for Appellant.

Tirey L. Ford, Attorney-General, and Henry A. Melvin, for Respondent.

McFARLAND J.— Defendant was charged with the murder of one Charles McLaughlin, and was convicted of murder in the second degree, and appeals from the judgment and from an order denying his motion for a new trial.

The principal features of the case are these: At about 6:30 o'clock of the morning of December 26, 1899, the appellant, the deceased, and one Gleason were engaged in playing poker in a card-room adjoining the main saloon of Fred Lutz, in the town of Ophir, Placer County. They had been so engaged through most of the previous night.   When the last hand was being played, the deceased "called" the appellant, and upon the latter naming his hand, deceased said, "That is good," and threw his hand over to Gleason, who was to deal next.   Appellant pulled the money which had been bet partly towards his own pile, when deceased demanded to again see the hand. Gleason, who had taken up appellant's hand preparatory to shuffling for another deal, took appellant's hand from the top of the deck and spread it upon the table, when it appeared that there were six cards in it.   Gleason testified that there were only five cards in appellant's original hand, but that in taking it off the deck he had accidentally taken another card with it.   The deceased immediately charged appellant with having six cards in his hand, and, reaching over the table, he took the money, which was lying some little distance from appellant's pile, and put it in his pocket.   Appellant demanded the money back and deceased refused to give it to him, and thereupon the game ceased.   The parties then went into the main saloon, where appellant several times demanded the money of the deceased, who refused to give it to him, and threatened to strike defendant if he did not let him alone. Deceased asked all present to drink, but appellant refused. The deceased, after he had taken his drink, went back into the

card-room, and was heard walking to and fro across the room. Appellant then took a drink by himself, saying to the barkeeper, "This will probably be the last drink I will ever take." He then drew his pistol and started towards the opening in the partition which led into the card-room. When a few feet from the opening, he was heard to say to the deceased, "Give me back my money, you —— —— ——, or I will shoot you," and the deceased was heard to say, "Shoot, you coward; you dars' n't." Thereupon appellant shot the deceased, who retreated, and appellant shot at him several times afterwards. Deceased died within half an hour, from the wounds inflicted by appellant.

There is no foundation for the contention that there was not sufficient evidence to support the verdict. That defendant killed deceased is beyond question. There are two defenses set up: 1. That the homicide was committed in justifiable self-defense, because, as asserted by appellant, when he approached the deceased the latter had his hand in his hip-pocket, and appellant had, therefore, reasonable ground for believing that he was about to be shot by deceased; and 2. That appellant had the right to kill deceased in order to prevent the latter from committing a felony, to wit, robbery, — appellant contending that the taking of the money by the deceased at the card-table constituted robbery; but the jury was justified in holding that neither of these defenses was established.

We do not think that there was any prejudicial error of law which warrants a reversal. Upon the general matters of law applicable to the case the court instructed the jury correctly, and certainly not unfavorably to appellant. As to the instructions touching the claim of self-defense, "appearances," etc., the appellant has no just cause of complaint. Upon these points the court, among other instructions, gave the following: "If you believe that the defendant was not a wrong-doer in seeking to get back his money, and the deceased met his death by such a demonstration as justified the defendant in believing the deceased was about to inflict great bodily harm upon him, and the assault is sudden and the danger apparently great, then I charge you the defendant was justified in standing his ground and in pursuing and slaying the deceased to win his own safety"; and "the jury are instructed that if they believe that Grimes killed McLaughlin, having reasonable

grounds to believe that if he did not do so, McLaughlin would then and there do him some great bodily harm, then his act was not either murder or manslaughter, but justifiable self-defense."

Appellant contends that there was error in giving instructions 8 and 9, which are as follows:—

"8. The defendant had the legal right to prevent the attempted commission of a felony, even to the extent of inflicting death upon the one so attempting; or if the one so attempting endeavored to escape with the proceeds of the felony, he also had the legal right to prevent such escape by any and all means, even to inflicting death; but if the attempt or commission would only amount to a misdemeanor, then the defendant had no such right."

"9. A homicide committed in endeavoring to restrain the commission of a mere misdeameanor is not justifiable under the law."

Appellant seems to assume that these instructions refer to the right of self-defense as against an assault or threatened assault on the person of the defendant by the deceased, and that they state the law to be, that if such assault would be only a misdemeanor, then the right to kill would not exist. But, clearly, the instructions do not refer to the right of a party to kill another in order to prevent an assault upon his person,—on which subject the court had already fully and correctly instructed. They refer to the other defense made by appellant, namely, that he had the right to kill the deceased in order to prevent him from keeping the money taken from the card-table, which, appellant contends, amounted to robbery; and it is apparent that the jury could not have otherwise understood them. There was no error in refusing instruction 13, asked by appellant. The substance of it was given elsewhere. Appellant's instruction 15 was properly refused, for the reason given by the trial judge. Instruction 17 was also properly refused, because it was as to the weight of certain evidence, which was a question for the jury. The foregoing includes all the points made as to instructions.

It appeared in the course of the introduction of the main evidence of the prosecution as to the facts of the homicide, that about or just prior to the shooting the deceased had his hand in or near his hip-pocket. In connection with this evidence,

CXXXII. Cal.—3

the prosecution, having proved that the appellant for a considerable length of time had worked with the deceased in the same mine, had slept with him in the same room, and had been on terms of great intimacy with him, was allowed, over appellant's objections, to prove, as part of its case in chief, that the deceased was noted for a marked peculiarity, which consisted in resting his hand on his hip or in his hip-pocket while walking or standing. Considering that it had already appeared that the deceased had his hand near his hip-pocket about the time of the shooting, it is not entirely clear that the evidence here in question was not proper as part of the prosecution's case in chief; but, conceding that it was irregular as part of the case in chief, still, if it was proper in rebuttal, the fact that it was introduced out of order would not warrant a reversal. (*People* v. *Arrighini*, 122 Cal. 124.) Indeed, its introduction in chief was apparently an advantage to appellant; and as appellant afterward testified that the fact of deceased having his hand at his hip was a reason why he anticipated danger, the evidence here in question was clearly admissible as rebuttal. The jury had the right to consider this evidence in determining, first, whether there was any real danger, and second, whether appellant had a reasonable apprehension of danger from the appearances. Neither do we think that there was error in allowing the witness Smith, who was an intimate acquaintance of the deceased, and had lived with him in the same house for a considerable length of time, to testify that he had never seen deceased with a pistol in his possession. This was in rebuttal of the testimony of two or three of appellant's witnesses, that they had seen deceased on certain occasions with a pistol. The testimony of appellant's witnesses was of value only as tending to show the habit of deceased as to going armed, and as to this subject the testimony in rebuttal was as proper as that introduced in chief.

We have noticed all the points made, and we see no grounds for a reversal of the judgment. The deceased may have treated the appellant unfairly and unjustly in the matter of the game of cards, but that treatment gave appellant no legal excuse or justification for taking his life.

The judgment and order appealed from are affirmed.

Garoutte, J., Van Dyke, J., Temple, J., Harrison, J., and Henshaw, J., concurred.