[Crim. No. 307.   Third Appellate District.—August 16, 1915.]

## THE PEOPLE, Respondent, v. WONG HING, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—ORDER OF PROOF—REOPENING CASE—DISCRETION.—Under section 1093 of the Penal Code, if the trial court is of the opinion that it would be in furtherance of justice to reopen a case to enable a party to introduce original testimony bearing upon a vital fact in the case, it has the power to do so, and its action will not be disturbed on appeal, unless it plainly appears to have been an abuse of discretion to the serious detriment of the party; and it is held in this prosecution for murder that the court did not abuse its discretion in allowing the district attorney, after defendant had rested his case, to offer evidence of the admission by the defendant that he shot and killed the deceased, which evidence had not been offered in the original case of the prosecution.

ID.—ORDER OF PROOF—WHEN DEFENDANT NOT PREJUDICED.—In such a case where the sole claim of the defendant was that he was not present at the place of shooting when it occurred, it may be assumed that he was equally as well prepared to meet the issue that he admitted the shooting at the time it was presented as he would have been had it developed in the original case of the people, and, therefore, he was not prejudiced by the reopening of the case for this purpose; and the ruling permitting it will not justify a reversal of the case.

ID.—INSTRUCTIONS—INTENT—PRESUMPTION.—In such a case an instruction that, "A person must be supposed to mean to do that which he actually, intentionally, and willfully does in fact do, and must also be presumed to intend all the probable and natural consequences of his voluntary act.   Therefore the law presumes that every one who deliberately and intentionally fires a gun at another, does such act willfully and with malice aforethought, and should such person thus shot at die from the wounds thereby inflicted within a year and a day thereafter, it would be murder unless the evidence on the part of the prosecution tends to show that the crime committed amounted only to manslaughter, or the evidence in the case shows that the accused was legally justified or excusable in the commission of such homicide," is a correct statement of the law in the abstract, and it is held that under the evidence and the other instructions given by the court, such instruction was not erroneously given in this case.

ID.—INSTRUCTIONS—CONSTRUCTION OF AS A WHOLE.—It was the duty of the jury, as it is the duty of the court on appeal in reviewing the instruction, to consider the entire charge of the court and if, as a whole, it correctly states the law, it is free from error, notwithstanding selected passages may state a proposition without at

the same time and in immediate connection stating the exceptions or qualifications to which it is subject in its application to the case in hand.

ID.—PRESUMPTION OF INNOCENCE—BURDEN OF PROOF.—Where the court repeatedly instructed the jury that the presumption of innocence was with the defendant, and that, consequently, the burden of proving the defendant's guilt beyond a reasonable doubt was upon the prosecution, and that unless the evidence established guilt beyond a reasonable doubt, defendant would be entitled to a verdict of acquittal, viewed by the light of these instructions, the above instruction must be considered to mean that if the evidence showed beyond a reasonable doubt that the defendant deliberately and intentionally fired a gun or pistol at the deceased, it was to be presumed that he did so willfully and with malice aforethought.

ID.—INTOXICATION OF DEFENDANT—INTENT—SECTION 22, PENAL CODE.— Where the court, after stating the rule under section 22 of the Penal Code that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but that whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act, further instructed the jury that "If you believe, gentlemen of the jury, from the facts in this case, that the defendant did kill Gue Ton, *or that the defendant was voluntarily intoxicated at that time, you shall find him guilty,*" while the instruction is awkwardly phrased in the italicized portion, it cannot reasonably be held to have assumed that the defendant did the shooting, and as telling the jury that if they found the defendant was intoxicated at the time of the shooting, they should find him guilty, regardless of whether he did the shooting; especially where the court in another instruction stated that the matter of intoxication should be considered merely for fixing the degree of the crime, and that in order to be guilty of murder the defendant must have been conscious of what he was doing.

ID.—LACK OF PREJUDICE—SECTION 4½, ARTICLE VI, CONSTITUTION.— Even if said instruction was erroneous, under section 4½ of article VI of the constitution, the case should not be reversed by reason thereof, where the evidence appears to be conclusive of the guilt of the defendant.

ID.—ARGUMENT—ALLEGED MISCONDUCT OF COURT.—In such a case where the district attorney in his argument stated to the jury "And to remove all such theory of suicidal death here, we have the defendant's own admission of the fact that he did the shooting," to which statement defendant excepted on the ground that there was

no evidence to support it, whereupon the court stated that it thought that this was in evidence, and the district attorney further stated, "Gentlemen of the jury, just using the testimony of one of their own witnesses, the defendant himself—just using his own words— he did the act; he has admitted it three different times," whereupon the defendant excepted to the remark, and the court stated, "The jury has heard the evidence. My idea is, not three different times, but three different witnesses," there was no error on the part of the court in making the statement, where three different witnesses had testified to the fact.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

Elmer W. Armfield, and Arthur B. Eddy, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was accused by information duly filed in the superior court of Yolo County of the crime of killing and murdering one Gue Ton, and, upon being tried upon said information, was found guilty by the jury of murder of the second degree.

The cause has been brought to this court by the defendant by an appeal from the judgment and the order denying him a new trial.

The homicide occurred on a hop ranch, known as the "Blauth Ranch," situated a few miles north of the town of Washington, in Yolo County, on the eighth day of September, 1914, at between the hours of 7 and 8 o'clock in the evening.

A large number of Chinese was engaged in picking hops on said ranch at the time of the homicide and the shooting took place in the Chinese camp. Information of the shooting was shortly after it occurred received by Constable Russell of the town of Washington, and he immediately went to the scene of the homicide. Arriving there he found the Chinese in a high state of excitement as a result of the shooting, and saw the dead body of Gue Ton, bearing several wounds produced by a pistol, lying on the floor of the camp. He proceeded to make an investigation and to this end looked underneath the

bunks in the bunk-house, situated about one hundred and twenty feet from the place where the body of the deceased lay when the officer arrived at the ranch. Under one of these bunks he saw a pile of rags or old sacks and, removing them, found the defendant lying under the bunk, the sacks having been placed over his body in such fashion as entirely to conceal him from view. The officer also found, wrapped up in an ordinary rice sack, near where the lower limbs of the defendant were as he was lying under the bunk, a 32-caliber Smith & Wesson revolver. The constable testified that the weapon bore every appearance of having recently been discharged or fired.

The officer placed the defendant under arrest and, accompanied by a Mr. Higgs, who was foreman of the Blauth Ranch, started in the direction of the spot where he had left his automomile, a short distance from the bunk-house. Higgs testified that, while on the way to the automobile, he questioned the defendant as to the cause of the trouble leading to the shooting, and the latter replied: "Too much men fight me and I shoot."

The defendant was taken by the constable to the police station at Sacramento, where, so two witnesses—one Martin and a police officer—testified, the defendant admitted having done the shooting.

An autoptical examination conducted by Dr. Ward disclosed that five pistol wounds had been inflicted upon the body of the deceased, any one of which (with the exception of the one entering the arm just above the wrist bone) was necessarily fatal to the life of the deceased. It was also shown by the *post mortem* examination that the bullets found in the body of the deceased were of 32-caliber and corresponded with those carried by the weapon found in the sack lying on the spot where the defendant was found by the officer.

The constable testified that, some three or four days after the homicide took place, he again visited the scene thereof and that upon making a further examination of the bunk-house, he found a 32-caliber empty shell underneath that part of the floor where he found the defendant.

Thus there has been presented herein a synoptical statement of the evidence produced by the people, not because there is any claim or suggestion that the evidence is insufficient to support the verdict, but because, in considering and disposing of cer-

tain points involving a challenge of the legal soundness of one of the court's instructions, it is necessary to have in view the proofs from which the jury educed their finding that the accused was guilty of slaying Gue Ton.

Before taking up, however, the several points upon which the defendant relies for a reversal, it ought to be said that the defendant denied having killed the deceased, claiming that he was not in the room in which the shooting took place at the time that it occurred and further claiming that, at that time, he was to such a degree under the influence of intoxicating liquor that he did not know that any trouble or shooting had taken place.

1. The district attorney did not, in his case in chief, prove the admissions by the defendant that he shot and killed the deceased and to which reference is above made; but, when the defendant rested his case, the district attorney offered proof of the admissions by the way of rebuttal. Counsel for the defendant objected to the testimony upon the ground that it was not proper rebuttal testimony, inasmuch (so they argue) as it was not addressed to any new matter brought out by the defense, but involved the proof of facts essentially a part of the people's original case. The trial court took this view of the proposition, but stated that, in the exercise of its discretion, it could and would reopen the case of the people and so enable them to make the proof. This course having been adopted, the proof was made, and now it is vigorously contended by the defendant that in thus allowing testimony of the defendant's admissions to go before the jury the court committed serious error or abused its discretion to the manifest prejudice of the rights of the accused.

Section 1093 of the Penal Code provides: "The jury having been impaneled and sworn, the trial must proceed in the following order, *unless otherwise directed by the court;* . . . 4. The parties may then respectively offer rebutting testimony only, unless the court, *for good reason, in furtherance of justice,* permit them to offer evidence upon their original case."

Counsel for the defendant contend that the trial court is without authority to exercise the discretion vested in it by said section until the party desiring to have his case reopened for the purpose of presenting testimony which, properly, should have been introduced as a part of his original case, has

affirmatively shown a reasonable excuse for omitting to present it before he rested his case in the first instance.    But we do not think any such procedure was intended by the legislature when enacting said section.    The trial is had under the control and direction of the court and the section appears to contemplate that where the court is of the opinion, based upon its own view of the whole situation as it is presented to it in a given case, that the failure to make proof of a particular fact, when it is within the power of the party to make such proof, would result in manifest injustice, and the party has failed or omitted for any reason to make the proof in his original case, it shall rest in its sound discretion to say whether such party's original case shall or shall not be reopened for the purpose of introducing such testimony.    In other words, if the court is of the opinion that it would be "in furtherance of justice" to reopen the case to enable the party to introduce original testimony bearing upon a vital fact in the case, it has the power to do so, and its action in that regard cannot be disturbed on appeal unless it plainly appears that the court has thus abused its discretion to the serious detriment of the substantial rights of the accused.    And the "good reason, in furtherance of justice," exists when it becomes manifest to the trial court, as certainly it would upon the mere suggestion of the proposition and without any other or an affirmative showing of "good reason" by the party applying for the reopening of his original case, that the proof thus to be offered is of a fact failure to establish which might result in a miscarriage of justice—that is, in a criminal case, either in an unjust conviction or an unjust acquittal, according to whether the party to be benefited by the proof be the defendant or the people.    That this is the correct view of the section under consideration is borne out by the cases.    (See *People* v. *Whitlow,* 24 Cal. App. 6, [139 Pac. 826], and cases therein cited.)

Furthermore, we are unable to perceive wherein the presentation of testimony of the admissions of the defendant out of its regular order could have prejudiced the accused in the slightest degree.    The defendant, so far as was concerned any adversary showing he might have desired or been able to make upon that issue, was in no measure handicapped or placed at a disadvantage by the order allowing the testimony in question to be received out of order.    His sole claim

was that he was not present at the place of the shooting when it occurred and he was, therefore, it may well be assumed, equally as well prepared to meet the issue that he admitted the shooting at the time it was presented as he would have been had it been developed in the original case of the people. In any event, as was said in *People* v. *Mar Gin Suie,* 11 Cal. App. 53, [103 Pac. 957], where the precise question was under discussion, so it is true here: "The testimony could appropriately have been made a part of the people's original case, and even if, strictly speaking, it was not proper rebuttal testimony, it being relevant and material, the fact that it was introduced out of the regular order would not justify a reversal of the case," citing *People* v. *Arrighini,* 122 Cal. 121, [54 Pac. 591] ; *People* v. *Grimes,* 132 Cal. 34, [64 Pac. 101]; *People* v. *Maughs,* 8 Cal. App. 107, [96 Pac. 407.]

2. The following instruction embraced in the court's charge to the jury, is assailed by the defendant: "A person must be supposed to mean to do that which he actually, intentionally and willfully does in fact do, and must also be presumed to intend all the probable and natural consequences of his voluntary act. Therefore the law presumes that every one who deliberately and intentionally fires a gun at another, does such act willfully and with malice aforethought, and should such person thus shot at die from the wounds thereby inflicted within a year and a day thereafter, it would be murder unless the evidence on the part of the prosecution tends to show that the crime committed amounted only to manslaughter, or the evidence in the case shows that the accused was legally justified or excusable in the commission of such homicide."

That said instruction contains a correct statement of the law in the abstract will not be disputed; but the defendant contends that it is inapplicable to the facts of this case and "in effect instructed the jury that the defendant had actually fired at the deceased, and that because of the fact of his firing the natural consequence of his act,—namely, the death of Gue Ton, was intended by him."

Considered alone, or without reference to other parts of the charge delivered by the court to the jury, the defendant's criticism would, of course, be sound and just; but it was the duty of the jury, as it is our duty in reviewing the instructions, to consider the entire charge of the court, "and if, as

a whole, it correctly states the law, it is free from error, notwithstanding selected passages may state a proposition without at the same time and in immediate connection stating the exceptions or qualifications to which it is subject in its application to the case in hand." (*People* v. *Mendenhall.* 135 Cal. 346, [67 Pac. 325] ; see, also, *People* v. *Doyell,* 48 Cal. 85; *People* v. *Flynn,* 73 Cal. 511, [15 Pac. 102] ; *People* v. *Worden,* 113 Cal. 569, [45 Pac. 844] ; *People* v. *Quimby,* 6 Cal. App. 482, [92 Pac. 493] ; *People* v. *Del Cerro,* 9 Cal. App. 764, 769, [100 Pac. 887] ; *People* v. *Bruggy,* 93 Cal. 476, [29 Pac. 26] ; *People* v. *Besold,* 154 Cal. 363, 370, [97 Pac. 871].)

The court, in its charge, repeatedly instructed the jury that the presumption of innocence was with the defendant, that, consequently the burden of proving the defendant's guilt beyond a reasonable doubt was upon the prosecution and that unless the evidence established guilt beyond a reasonable doubt the defendant would be entitled to a verdict of acquittal. Viewed. by the light of these instructions, the criticised instruction must be construed to mean, as no doubt the jury so understood it, that if the evidence showed beyond a reasonable doubt that the defendant deliberately and intentionally fired a gun or pistol at the deceased, it was to be presumed that he did so willfully and with malice aforethought. As stated, the jury presumptively so understood the instruction and as so construed it was properly given in this case.

3. The court gave an instruction addressed to the evidence bearing upon the defendant's alleged intoxicated condition at the time of the commission of the homicide and which stated the rule promulgated by section 22 of the Penal Code. After stating the rule that "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition," but that "whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act," the court continued: "If you believe, gentlemen of the jury, from the facts in this case, that the defendant did kill Gue Ton *or that the defendant was voluntarily intoxicated at that time, you shall find him guilty.*"

The defendant, while asserting that the instruction was not

pertinent to any issue of fact in the case, particularly complains of that part of it which is italicised as above given, and of that language it is said that it assumed that the defendant did the shooting and virtually so told the jury; that, moreover, by the use of that language the court in effect declared to the jury that if they found that the defendant was intoxicated at the time of the shooting they should find him guilty, "regardless of whether he did the shooting."

Readily it will be conceded that the instruction, in the particular last referred to, is awkwardly phrased; but to hold that the jury understood and acted upon the criticised language of the instruction according to the defendant's construction of it and its effect would require us to impute to the members of that body a very inferior standard of intelligence. No person of ordinary or common sense would accept as a sound legal proposition so obviously absurd a statement that the mere fact that a person was in an intoxicated condition, superinduced by his own voluntary conduct, at the time of the commission of a crime would be sufficient to prove that he had committed such crime or that the jury would thus be warranted in finding him guilty thereof.

But that the jury could and did not ascribe to the language referred to the meaning or signification which counsel for the defendant seem to extract from it must become absolutely certain when the language immediately following it in the same instruction is considered, which is as follows: "And in rendering your verdict you shall consider the state of his intoxicated condition in case you believe that he was intoxicated at the time *merely for fixing the degree of the crime.* Of course, in order to commit the crime of murder one must be conscious of what he is doing and have the intent to commit the crime. In case you should find that the defendant committed the act of killing Gue Ton, but that he was intoxicated to such a degree that he was wholly unconscious of what he was doing, then you shall find him not guilty."

The instruction, while intended to lay down the rule respecting the intoxicated condition of a person charged with crime at the time of the commission thereof, contains some language which would appear to be more pertinent to a case wherein the defendant has introduced an insanity defense, and in this particular the language is anything but clear or fails in a lucid explanation of the degree of insanity which

would absolve a person charged with crime and relying upon
that defense from responsibility for the act constituting one
of the elements of the offense charged against him.  But,
nevertheless, the instruction was favorable to the defendant
and when read in its entirety will clearly demonstrate that
the jury could not therefrom have obtained the impression
that the guilt of the accused was sufficiently shown merely
by sufficient proof that he was in an intoxicated condition
when the homicide was committed.  That the instruction, so
far as it involves a statement of the rule enunciated by section
22 of the Penal Code, was applicable to evidence brought out
by the defendant, there is no ground for supporting a doubt.

But, assuming that the instruction, whose language we do
not altogether commend as a clear statement of, the rule ex-
pressed by said section 22, might justly be held, under the
system formerly prevailing in this state, to be prejudicial
*per se* or as involving such error as that a presumption of
injury to the vital rights of the accused would arise or follow
from the giving thereof, still we are of the opinion that, in
view of the evidence, which appears to be conclusive of the
guilt of the defendant, section 4½ of article VI of the constitu-
tion applies and excuses the error.  Said section of the con-
stitution provides that ''No judgment shall be set aside, or
new trial granted, in any case, on the ground of *misdirection
of the jury* . . . unless, after an examination of the entire
cause, including the evidence, the court shall be of the opinion
that the error complained of has resulted in a miscarriage of
justice.''

We are unable to perceive how it may consistently be said
that the error in giving the instruction in question, assuming
that it was error to give it, has resulted in a miscarriage of
justice, since the record here discloses undisputed evidence
that the defendant admitted shooting the deceased.

There are some other parts of the court's charge challenged
as involving, in effect, an instruction upon questions of fact
in that they assume (so it is claimed) that the defendant did
the shooting.  We have painstakingly examined these assign-
ments but are not impressed with the justness of the criticism
directed against the instructions thus assailed.  Like the in-
struction first above considered, they, taken alone or without
regard to their connection with the charge of the court in
its entirety, might properly be said to be obnoxious to the

objections urged against them. But, as before declared, they should be viewed as only an integral part of the whole charge delivered to the jury. As so viewed and considered, the objections raised by the defendant against them here will readily disappear. It will not be denied that they contain an accurate and well-expressed abstract statement of legal principles pertinent to the case here.

4. The next and last point made by the defendant is that the court, during the argument of the case to the jury by the district attorney, made certain remarks seriously militating against his right to a fair and impartial trial.

The district attorney, in his address, among other things, said: "And to remove all such theory of suicidal death here, we have the defendant's own admission of the fact that he did the shooting." To this statement counsel for the defendant excepted on the asserted ground that there was no evidence to support it. The court said: "Proceed. I think this is in evidence." Proceeding in his address, the district attorney again declared: "Gentlemen of the jury, just using the testimony of one of their own witnesses, the defendant himself— just using his own words—he did the act; he has admitted it three different times." This statement was also excepted to by the defendant, whereupon the court remarked: "The jury has heard the evidence. My idea is, not three different times, but three different witnesses."

Exception was taken by the defendant to the remarks of the court in each of the above mentioned instances.

As has already been shown, three different witnesses testified that the defendant admitted in their presence and hearing that he did the shooting which caused the death of the deceased, and it is, therefore, plainly manifest that the point under consideration is wholly devoid of merit. The court, in passing upon the defendant's objections to the statements of the district attorney, was necessarily required to say whether there was in the record evidence justifying said statements, and in doing so it appeared to have exercised proper caution not to say anything which would indicate that it had any opinion as to the effect of the evidence or that any fact had been *proved* by the evidence. The remarks of the court merely were that it was *in evidence* that the accused had admitted the shooting and that the *admission was testified to by three different witnesses* rather than having been made by the de-

fendant three different times, as the district attorney stated. What the court said was substantially true, the record showing that the admission by the defendant was made on two different occasions—on one to the witness, Higgs, and on the other to a police officer in the presence of the witness, Marten.

No legal reason having been shown for returning the cause to the court below for a trial *de novo,* the judgment and the order appealed from are affirmed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.