[Crim. No. 926.  Second Appellate District, Division Two.—March 15, 1923.]

THE PEOPLE, Respondent, v. W. M. PICKENS, Appellant.

[1] CRIMINAL LAW—ROBBERY—ASSAULT WITH DEADLY WEAPON—EVI-
DENCE—JUDGMENT.—The prime purpose of the conspiracy in as-
saulting the complaining witness not having been to rob him,
but rather to drive him from the community, the robbery having
been an afterthought of one or some of the conspirators, and
much of the evidence necessary to sustain the verdict of assault
with a deadly weapon not having been essential to establish the
robbery, and that testimony which showed that a robbery was
committed and that the defendant was a party to it having been
capable of separation from that proving the assault, the judg-
ment of conviction of robbery and of assault with a deadly weapon
was proper.

[2] ID.—CREDIBILITY OF WITNESS—RELATIONSHIP TO PARTY IN IN-
TEREST.—It is permissible upon cross-examination to show the fact
of relationship, fraternal or otherwise, existing between the wit-
ness and the party in whose interest he is called, as tending to
affect his credibility.

[3] ID.—MEMBERSHIP OF CHIEF OF POLICE IN K. K. K.—KNOWLEDGE
OF SUBORDINATES.—In a criminal prosecution, it is error to ad-
mit evidence showing that a certain chief of police (who was not
called as a witness) was a member of the Ku Klux Klan, as
was the defendant, where certain of his subordinate officers were
called as witnesses for the defendant and they testified that the
reputation of the complaining witness for truth, honesty, and in-
tegrity was bad, but it is not shown that such subordinate offi-
cers had any knowledge respecting membership of the chief of
police in the Ku Klux Klan.

[4] ID.—ASSAULT WITH DEADLY WEAPON—DEFENSE—EVIDENCE—IN-
STRUCTIONS.—In a prosecution for assault with a deadly weapon
and for robbery, where the only defense interposed is an attack
upon the reputation of the prosecuting witness for truth, honesty,
and integrity, and the evidence shows beyond question that the
complaining witness was attacked with deadly weapons and was
robbed, it is not reversible error to refuse to instruct the jury
that they might return a verdict of assault as an offense included
in those charged in the indictment.

APPEAL from a judgment of the Superior Court of Kern
County.  J. W. Mahon, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Thomas Scott, Jr., and Charles A. Barnhart for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was convicted of two crimes charged in separate counts of an indictment. He was found guilty of robbery and of assault with a deadly weapon.

[1] The following constitute the material facts: After making an appointment by telephone to meet them at a certain place, defendant and several confederates attacked one Clyde Richey, the complaining witness, when he alighted from a taxicab driven by him. One of his assailants attempted to put a black cloth over his head. Richey resisted and during the struggle was beaten over the head by pistols or revolvers. At some time before the affray ended $350 was taken from his pocket. The approach of the witnesses Schultz and Hendricks caused the attackers to desist. They entered an automobile standing near by, which was identified as that of Pickens, and fled. Richey pursued them in his taxicab and after seeing appellant's machine swerve into a ditch and stick there, went for aid; he soon returned with a police officer and friends and found Pickens attempting to extricate his machine. The officer arrested Pickens and searched his car, in which was found, among other articles, a can of tar, a can-opener and a paint brush. It appears that Pickens was a rival of Richey's in the taxicab business; and evidence was introduced to show that the appellant had suggested the attack at a committee meeting of the Ku Klux Klan of which he was a member. To be more specific, his statement was, "That Richey's conduct was such that it would be good riddance to take him out of the city or give him a flogging." It is apparent that these facts permit the construction that the prime purpose of the conspiracy in assaulting Richey was not to rob him, but rather to drive him from the community, and that the robbery was an afterthought of one or some of the conspirators who took advantage of the opportunity presented to enrich themselves by appropriating Richey's money. Viewed in this light the robbery was not a part of the same offense as the assault and the case is substantially identical with *People* v. *Bent-*

*ley,* 77 Cal. 7 [11 Am. St. Rep. 225, 18 Pac. 799]. In that instance a conviction of robbery was sustained, although the defendant had been found guilty of having committed an assault with a deadly weapon upon the same occasion. In deciding the appeal the supreme court said: "The offense of which the defendant was first convicted was an effort to injure the person of the prosecutor with a deadly weapon; that of which he was last convicted was an attempt to take away the goods of the prosecutor from his person by intimidation or violence. The essential elements of the two offenses are not the same."

Tested by the rule announced for cases of this character in *People* v. *Ciulla,* 44 Cal. App. 727 [187 Pac. 49], that is, whether the evidence necessary to sustain a conviction of one offense would justify a conviction of the other, it seems clear that this judgment must be upheld. If robbery was not the purpose of the assault upon Richey, much of the evidence necessary to sustain the verdict of assault with a deadly weapon was not essential to establish the robbery, and that testimony which showed that a robbery was committed and that Pickens was a party to it is capable of separation from that proving the assault with a deadly weapon. The essential elements of this robbery and of the particular assault of which appellant was convicted are not the same, although in general terms violence is involved in crimes of the class to which both belong.

[2] Appellant's second point is that the court erred in admitting evidence showing that Charles H. Stone, the chief of police, was a member of the Ku Klux Klan. Stone was not a witness, but Assistant Chief of Police Taylor had testified for the defendant that the general reputation of Clyde Richey for truth, honesty, and integrity was bad. The witnesses Cornwall, Hudson, and Lawson, all officers under Chief of Police Stone, had testified to the same effect. It was established that the defendant Pickens was a member of the same lodge of the order as the chief of police, and there was evidence to the effect that the offense had been suggested by Pickens at a committee meeting of the same lodge.

"It is elementary law, supported by all authority, that the state of mind of a witness as to his bias or prejudice, his interests involved, his hostility or friendship toward the

parties, are always proper matters for investigation, in order that truth may prevail and falsehood find its proper level. If the inner workings of a witness' mind actuating his testimony, and the workings of that mind are brought forth to the light and held up in full view before the jury, results will be obtained much more in accord with truth and justice than though the witness' testimony is weighed and measured by his words alone." (*People* v. *Thomson,* 92 Cal. 506 [28 Pac. 589].) For the purpose of fully weighing the evidence of any witness, the jury are entitled to know his bias or feelings in the case, if any there be. (*People* v. *Wong Chuey,* 117 Cal. 626 [49 Pac. 833].) It is permissible upon cross-examination to show the fact of relationship, fraternal or otherwise, existing between the witness and the party in whose interest he is called, as tending to affect his credibility. (*People* v. *Cowan,* 1 Cal. App. 411 [82 Pac. 339].) "No reason for holding that the witness must first be examined as to his hostility, and that then, and not until then, a witness may be called to contradict him, because it is not a case where the party against whom the witness is called is seeking to discredit him by contradicting him. He is simply seeking to discredit him by showing his hostility and malice and as that may be proved by any competent evidence, we see no reason for holding that he must first be examined as to his hostility. And such we think is the drift of the decisions in this state and elsewhere." (*People* v. *Brooks,* 131 N. Y. 321 [30 N. E. 189].) [3] However, the fact of Stone's membership in the Ku Klux Klan without any proof that the witnesses whom it was sought to show were biased thereby had any knowledge of his being a member was clearly irrelevant to the issue. The evidence to which objection is made was offered in rebuttal. Its only purpose was to discredit the officers' testimony concerning Richey's reputation. Extrinsic evidence may be introduced of any circumstance suggestive of probable personal prejudice of a witness. The range of external circumstances from which probable bias may reasonably be inferred is too great for legal limitation, but the reason for admitting evidence of bias and interest is that the existence of such emotions renders the witness untrustworthy. It is self-evident, in order that one may be influenced by an emotion due to some circumstance such as relationship, the person

thus affected must have a knowledge of the fact. It is inconceivable that the membership in the Ku Klux Klan of the chief of police could bias his subordinate officers, unless they were aware of his connection with the order, and no evidence appears in the record from which even an inference may be drawn that they possessed such knowledge.

But although the court committed error in overruling the defendant's objection to this testimony, we are convinced that no substantial prejudice resulted. As before stated the only purpose of the evidence was an attempt to discredit the officers' testimony. If the court had sustained the objections and the jury had accepted as true the defense witnesses' assertions that the reputation of Richey for truth, honesty, and integrity in the community was bad, it is highly improbable that the jury's verdict would have been affected in the least. The essentials of Richey's story were fully corroborated by the uncontradicted testimony of others. The facts of the assault, as to time and place, the injuries received by the victim, the number of the assailants, their robes and revolvers, their conduct, manner, and direction of flight, the general description of their machine, and similar details were established by witnesses other than Richey. Then we find uncontested evidence of the pursuit by him of an automobile similar to that in which those who made the attack left the scene, and also to that of Pickens, to which, imbedded in a ditch by the road, Richey conducted witnesses; again the record shows that Pickens' machine contained articles suggestive of a connection with the assault. The prosecution proved the existence of a motive upon the part of the appellant to injure the complaining witness and his efforts to induce others to join in unlawful conduct against him. These facts and others of a like character were established without dispute and by witnesses who were in no way impeached, and, considering them alone, we are satisfied that to reverse the judgment would indeed work a miscarriage of justice because of mere technical error.

[4] Certain instructions asked by the defendant were refused. These were as follows: ''The court instructs the jury that if you believe from the evidence, beyond a reasonable doubt, that the defendant committed an assault upon the person of Clyde Richey as charged in the indictment, but do not find from the evidence that such assault was

made with a deadly weapon or with intent to kill and murder the said Clyde Richey, then you should find the defendant guilty of an assault.''

And also this instruction: ''The jury are instructed that under the indictment charging the defendant with the crime of robbery, that you may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, and you are therefore instructed that under said indictment charging robbery, you may convict the defendant of a simple assault.''

It is true that assault is an offense included within the charge of assault with intent to commit murder, and also that of robbery, but the evidence showed beyond question that Richey was attacked with deadly weapons and was robbed of $350. The failure to inform the jury that they might return a verdict of assault as an offense included in those charged in the indictment cannot be said to have been prejudicial error. The only defense interposed was the attack upon the reputation of the prosecuting witness for truth, honesty, and integrity. Had the court instructed the jurors as requested and informed them that they might convict the defendant of assault under the second count of the indictment it is inconceivable that the verdict would have been otherwise than as it was rendered. Surely, if the uncontradicted story detailed by the people's witness is accepted as the truth, the conclusions reached by the jury were unavoidable. We have carefully studied the entire record, including the transcript of the evidence, and are convinced that no miscarriage of justice resulted from the errors in misdirecting the jury and in improperly receiving evidence. Under such circumstances a judgment will not be reversed. (Sec. 4½, art. VI, Const.; *People* v. *Wong Hing*, 28 Cal. App. 230 [151 Pac. 1159]; *People* v. *Fealy*, 33 Cal. App. 605 [165 Pac. 1034].)

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.