[redacted]

[Crim. No. 2515. Second Appellate District, Division One.—April 19, 1934.]

THE PEOPLE, Respondent, v. KENNETH PARMELEE, Appellant.

[redacted]

[redacted]

David G. Sokol and David Ziskind for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment which followed his conviction of the crime of assault; also from an order by which his motion for a new trial was denied.

The incident which resulted in the alleged assault of which defendant was convicted arose on an occasion when a so-called ''hunger parade'' was about to take place. The pertinent testimony adduced on behalf of the prosecution was to the effect that, without provocation of any sort, defendant committed the assault in question. On the other hand, on behalf of defendant, testimony was given by each of several witnesses in substance that, not until after defendant had been attacked by the asserted victim of his assault did he offer any physical violence to the person who theretofore had been the aggressor and the instigator of the difficulty between them.

The principal reason urged by appellant for a reversal of the judgment depends primarily upon the fact that, over the objection of defendant, as to each of the witnesses called by him to testify in his behalf, the prosecution was permitted to insistently and repeatedly question the witness not only as to whether he was a member of the Communist party, but as well with reference to its general activities and its participation or interest in the ''hunger parade'' on the occasion in question,—all without first, or ever, either establishing, or offering to establish, the fact that *defendant* was a member of the Communist party, or that he had any political or other connection therewith. It also appeared that but one of the several witnesses introduced by defendant was a member of the Communist party. Also lacking in that which for convenience only may be termed a ''foundation'' for the introduction of evidence relating in any manner to the Communist party,

it is noted that the prosecution utterly failed to show that that party, or any branch or subdivision thereof, had any concern or interest whatsoever in the "hunger parade"; nor was any evidence introduced by which the Communist party was defined, or by which its objects or its purposes were made to appear.

In connection with the examination of such witnesses, the purpose thereof was made clear by the line of argument in which the deputy district attorney indulged in his address to the jury, of which the following excerpts are examples:

" . . . But, behind that innocent gathering, you see the sinister banner of anarchy. These people, who went there, not because they were hungry, not because they were out of work, but because they were members of a party that you know too well. . . . These people who went there, not because they were oppressed or distressed for want of food, clothing and employment, but because they recognized in that group of two or three hundred people, who were suffering from hunger and unemployment, the closest allies of anarchy, who recognized there a fertile bed, wherein they might deposit seeds of anarchy, they went there for that purpose, to stage a demonstration, not a hunger demonstration, but to stage their own demonstration, aided, assisted and abetted by these unfortunate people who were going to stage this little gathering. And when they saw that the representatives of the people of this community, the representatives of law and order, your representatives, were there, to see that there was no violence, that there was no demonstration of that kind, it aggravated them beyond control, because those individuals hate your representatives fundamentally; they hate police officers. And, when they realized that these police officers were there for the purpose of stopping them from staging their demonstration in conjunction with the hunger march, it aggravated them to the extent that they resorted to their old characteristics, force and violence. . . . Now, there is where you are going to have to determine who told the truth in this case. You are going to have to determine whether a woman such as Mrs. Clear, has told the truth, who comes here and tells you that she went down to join the hunger parade, and that she saw this fight, . . . Now, let us examine into who this Mrs. Clear is. She admits that she is a member of the Communist party and

she tells you in one breath that she went down to this parade because she wanted to join in the hunger strike, in the hunger parade, and we question her a little further, and we find that she and her husband own a ranch within the city limits of Redondo, and we find not only that she has sufficient funds, so that she can stage what she calls social gatherings and dances at her home. Now, frankly, are those the kind of hunger victims that you and I have to feed? Do you see any truth in her story? . . . Now, I don't need to tell you what the principles of the Communist party are. Their principles are too well shown by the actions of the people connected with it in this case. They didn't go down there with any idea of helping these poor hungry people. They went down there with the sole idea of taking advantage of this gathering. They knew that hunger and distress were their closest allies; they knew that they could foment a disturbance down there; they knew that the frame of mind in which they would find these people would be the best thing in the world to help them along. They knew it was a fertile bed for them to get new members for their cause, and when they discovered that the police department were down there to keep these people in order, to see that no one was hurt—they knew there were women and children there in the parade—when they discovered their worst hated enemy was there, and when the police undertook to keep them in order, this defendant struck the officer, with this stick, over the head. . . . All I have to say to you is to stand behind your police officers as against a society of that character. . . . They were down there for an entirely different purpose, and had this Communist element kept out of there, there would have been no trouble at all. They are the persons who injected themselves into that proposition, knowing that it was a fertile field for them, and had they not been there that demonstration would have been staged without any trouble whatever. . . . When they discovered the officers were there and would not permit them to stage their demonstration and then they took the law into their own hands and this is the result.''

It is apparent that such argument, burdened as it was with harsh insinuations and innuendo, was well calculated to excite and to inflame the passions of hatred of, and re-

taliation against, the Communist party and its members, and in connection therewith to injuriously reflect upon the character and the credibility of defendant and the several witnesses who had testified in his behalf. Ordinarily, in circumstances analogous to those here present, with reference solely to an inquiry of a witness regarding his political faith or adherence, it is obvious that, although it might be considered irrelevant, its prejudicial effect might not be discernible. But in the instant case, especially in view of the fact that the evidence adduced by the prosecution was so strongly contradicted by testimony of witnesses who appeared on behalf of defendant, when the questions with reference to whether the several witnesses were members of the Communist party and the answers thereto are considered in connection with the remarks made by the deputy district attorney to which attention hereinbefore has been directed, the prejudicial effect upon the substantial rights of defendant becomes so manifest that further discussion thereof would amount to a superfluity. (*People* v. *Pickens*, 61 Cal. App. 405 [214 Pac. 1027].)

It is ordered that the judgment and the order by which defendant's motion for a new trial was denied be and they are reversed.

Conrey, P. J., concurred.

York, J., dissented.