Filed 11/5/20  P. v. Schafer CA3
Opinion on transfer from Supreme Court
See concurring & dissenting opinion

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C083560 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F04925) |
| v. | |
| DANIEL GENE SCHAFER, | OPINION ON REMAND |
| Defendant and Appellant. | |

A jury found defendant Daniel Gene Schafer guilty of attempted first degree robbery, first degree robbery, first degree burglary, and possession of a firearm by a felon.[1]  It also found defendant personally used a firearm during the commission of the attempted robbery, robbery, and burglary.  After the court found defendant had been convicted of seven prior strike offenses, it sentenced him to 98 years four months to life

---

[1]  Defendant and codefendant Michalei Brown were tried during the same trial but by separate juries.  Brown is not a party to this appeal.

1

in prison.  On appeal, defendant argues two evidentiary and multiple sentencing errors. We agree with defendant's sentencing contentions and remand to the trial court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Crimes*

In August 2015, Wade M., Brown, and defendant were in Wade's garage figuring out a way they could get drugs without having to pay for them because none of them had any money.  The group decided they would rob Peter L., a drug dealer they knew, who had recently been in a car accident and was couch-bound.  The group discussed a plan and defendant told them he had a gun to commit the robbery.  Wade would not participate in the actual robbery because Peter did not like him and would know something was wrong if he saw Wade.  Brown was injured at the time and could not walk.

Brown called Peter and asked if she could go to his house to buy drugs.  After Peter spoke with defendant to assure himself defendant was trustworthy, Peter allowed Brown and defendant to come over.[2]  Given the time of Brown's call (between 4:00 a.m. and 5:00 a.m.) and his own vulnerable condition, Peter thought it best to ask a friend to come over, so he was not alone when Brown and defendant arrived.  Peter texted his friend Ivan B. to come over to help with house work and Ivan agreed.  Ivan arrived at Peter's house soon after.

Around 5:00 a.m., Peter told Ivan his friends were coming over and that Ivan needed to meet them outside with Peter's wheelchair because Brown could not walk. When Ivan got outside and defendant parked his truck, Ivan attempted to help Brown out

---

[2]     Although he testified under a grant of immunity, Peter denied being a drug dealer. Instead, he testified Brown and defendant came over to sell him food stamps.

2

of the truck but defendant said he would do it. Wade was crouched in the backseat of the truck hidden from view and Ivan did not see him. Only defendant and Brown followed Ivan into Peter's house with defendant pushing Brown in the wheelchair.

When they got inside, defendant locked the door behind him and told Ivan to keep his hands visible. Ivan asked if defendant was joking, and defendant responded by pulling out a handgun and demanding Ivan get on the ground or he would be shot. Ivan complied. Defendant also demanded Ivan give him his cell phone, which Ivan did by placing it on a nearby couch. Defendant picked it up and handed it to Brown who appeared to go through the contents of Ivan's phone.

Defendant then took several steps toward Peter. Peter pulled out a gun and pointed it at defendant and also verbally threatened to shoot him. Peter's gun was a BB gun but appeared to be real. Defendant immediately retreated behind Brown and crouched down. Peter and defendant both yelled threats at each other and at Brown. Peter called his landlord on his cell phone, who lived next door, and told her he was being held at gunpoint. The landlord immediately hung up and called the Sacramento County Sheriff's Department.

Following Peter's conversation with his landlord, defendant backed out of Peter's house with Brown while still holding the gun at both Peter and Ivan. When they got outside, defendant helped Brown into his truck and drove away. Defendant told Wade that they were unable to get "anything" from Peter because Peter had a gun.

When the group arrived back at Wade's house, they went into the garage and again brainstormed about ways to "get high." Wade went into the house and returned with a check from his mother's bank account. He filled it out for $200 payable to defendant and forged his mother's signature. He gave the check to defendant to cash, who said he would be back shortly with the money; however, defendant never returned.

Following the incident, Ivan identified defendant in a six-pack photo lineup. At trial, Peter was "[p]retty sure" defendant was the man who attempted to rob him. Peter

3

testified, however, that he picked defendant out of the six-pack photo lineup because he looked the most like the man who attempted to rob him but did not think it was him. The deputy who administered the six-pack photo lineup disputed this account and testified that Peter confidently picked defendant after viewing the lineup for three to ten seconds.[3]

## II

### *Sentencing*[4]

At sentencing, defendant moved to strike his prior strike convictions. The court denied his motion, reasoning that defendant committed his crimes after a short period of freedom from a long incarceration. Further, defendant's current crimes were the same type of crimes for which he had previously been convicted. The court also found defendant's prospects "are poor given what we have seen. There's -- there's little to no chance that the [d]efendant's path would turn, at least in my mind, if history is any indication of the future, which generally that's the best gauge we have." After reciting the purpose of the three strikes law, the court found that defendant did not fall outside of its purpose. Indeed, it observed defendant "would be a model for why the three strikes law exists. So for those reasons the request to strike the strikes are denied."

The trial court then imposed 25 years to life for the attempted robbery conviction plus 10 years for the gun enhancement under Penal Code[5] section 12022.53,

---

[3]    Defendant testified in his own defense and claimed he did not participate in the crimes. Instead, he claimed he took Brown to pick up a food stamp card from Peter. He dropped Brown off at the corner near Peter's house and drove away. Brown called him a few minutes later and he picked her up. He then drove her back to Wade's house where Wade gave him money he owed him. Wade claimed his mother was covering the debt for him.

[4]    Defendant raises multiple evidentiary claims on appeal. We will discuss the facts relevant to those claims in the relevant discussion section.

[5]    Further section references are to the Penal Code, unless otherwise indicated.

4

subdivision (b) attached to that conviction. It further imposed 25 years to life on the robbery conviction plus three years four months for the gun enhancement also under section 12022.53, subdivision (b) attached to that conviction. It imposed, and then stayed pursuant to section 654, 25 years to life for the burglary conviction and three years four months for the attached firearm enhancement under section 12022.5.[6] As to the possession of a firearm by a convicted felon, the trial court imposed 25 years to life. It also imposed two prior serious felony conviction enhancements pursuant to section 667, subdivision (a), for a total term of 98 years four months to life in prison. When announcing defendant's sentence, the court indicated it did not have the discretion to sentence defendant to concurrent terms as consecutive terms were mandated by statute.

Defendant appeals.

DISCUSSION

I

*Evidentiary Claims*

Defendant contends the trial court erred by admitting the facts underlying his prior robbery convictions to show intent and common plan pursuant to Evidence Code section 1101, subdivision (b). He also contends the trial court erred by excluding evidence the prosecutor knew Wade's mother. We disagree.

The trial court has broad discretion in determining the admissibility of evidence. "A trial court's ruling to admit or exclude evidence . . . is reviewed for abuse of discretion and will be upheld unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.)

---

[6] The court orally imposed four years three months, which the reporter's transcript indicated was obvious error. The abstract of judgment, however, is missing any notation to defendant's burglary conviction and the subsequently stayed sentence.

5

## A

*The Court Did Not Abuse Its Discretion By Admitting The*

*Facts Of Defendant's Prior Robbery Convictions*

Defendant first challenges the court's admission of the facts underlying his prior robbery convictions for the purposes of showing his intent and common plan. He argues that because he testified he did not rob Peter, his intent was not at issue and the evidence was irrelevant. He also argues the facts underlying his prior robbery convictions were not sufficiently similar to the facts of the current offense to show a common plan, making the evidence's admission for that purpose prejudicial.

## 1

*Background*

Defendant objected to the admission of the facts underlying the two prior robberies he committed when he was 16 years old. The court overruled the objection finding the prior robberies were sufficiently similar to the current robbery for the purposes of showing defendant's intent and common scheme or plan.

The first robbery occurred in January 1997 when defendant and his girlfriend entered a high-end furniture store and defendant held two store clerks at gunpoint after initially going to the bathroom and leaving his girlfriend to talk with the clerks. Defendant demanded money and access to the safe. When a clerk told defendant the store did not carry cash and that customers paid with credit cards, defendant took the clerks' purses and wallets. Before fleeing, defendant unplugged the handsets to all of the phones, but the clerks were able to call police using the speaker phone. At trial, one of the clerks testified to the facts of the robbery. When asked to identify defendant, she asked not to because she did not want to look at him given the traumatic nature of the robbery.

The second robbery occurred in February 1997 when defendant and a female companion held a taxi cab driver at gunpoint, forcing him to give them his wallet, cash,

and wedding ring. They took the man to an apartment complex that night and tied him up before deciding to make him drive them to an ATM, where he could withdraw cash to give them. After taking money from the driver's bank account, defendant tied the driver to the driver's seat of his taxi cab and fled. The driver testified to the facts of this robbery and said the event was very traumatic for him.

As a result of these robberies, defendant had seven felony convictions and served 18 years in prison. He was released 16 months before the current crimes occurred. After admission of these prior acts, the trial court instructed the jury: "This is not what we call propensity evidence, that is [defendant] did these acts, then therefore he must have done this act he's charged with now. That's not what this evidence was for. This -- in -- prior to your beginning to hear evidence, I had ruled that certain evidence can come in under an Evidence Code section. This evidence would be used by the People to show what we call intent or common scheme or plan. And when the People argue their case, that is what the People will use the evidence for, not to show that because the prior acts were committed, this act must have been committed. . . . It is only to be used by the People to show a common scheme or plan or to show evidence of intent."

2

*Discussion*

Evidence Code section 1101, subdivision (a) prohibits the admission of evidence of uncharged offenses to prove propensity or disposition to commit the charged crime. (*People v. Ewald* (1994) 7 Cal.4th 380, 393; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.) However, subdivision (b) of that section provides that such evidence is admissible "when relevant for a noncharacter purpose -- that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake of fact or accident.' " (*Hendrix*, at p. 238.) " 'Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are

7

sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1123.)

*Ewoldt* provides the framework to analyze defendant's claim: "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act. . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

"A greater degree of similarity is required in order to prove the existence of a common design or plan. . . . '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 402-403; see also *People v. Thomas* (2011) 52 Cal.4th 336, 355.) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Ewoldt*, at p. 403.)

Because establishing a common scheme or plan requires a greater degree of similarity than establishing intent, we will address defendant's arguments in reverse order. Defendant relies on *Leon* and *Foster* to show his case lacked the degree of similarity required in those cases to show common scheme or plan. (*People v. Leon* (2015) 61 Cal.4th 569; *People v. Foster* (2010) 50 Cal.4th 1301.)

8

In *Leon*, the defendant was convicted of multiple counts of murder and robbery related to a month-long crime spree. (*People v. Leon*, *supra*, 61 Cal.4th at p. 576.) Our California Supreme Court held evidence of prior robberies was properly admitted, reasoning that the uncharged robberies and the charged robberies occurred at small stores located in the same general neighborhood. (*Id*. at pp. 594, 598.) Additionally, the uncharged robberies occurred only a few days before and after the charged robberies and a gun stolen in one of the uncharged robberies was used to commit some of the charged robberies and the murders. (*Id*. at p. 598.)

In *Foster*, the defendant was convicted of first degree felony murder, second degree burglary, and second degree robbery. (*People v. Foster*, *supra*, 50 Cal.4th at p. 1307.) At trial, the prosecution introduced evidence of two uncharged robberies that shared the following features with the current crime: the defendant "visit[ed] an office in the middle of the day, determin[ed] that a woman was alone in the office, return[ed] in the middle of the day, mov[ed] the woman to a more remote area of the premises, demand[ed] the woman's money and any other cash available on the premises, and violently attack[ed] her when she resisted." (*Id*. at pp. 1326-1327, 1329.) The trial court accepted the other-crimes evidence as sufficiently similar to prove common plan, intent, and identity (*id*. at p. 1327), and our Supreme Court upheld this ruling, however, declined to determine whether the evidence was also admissible to prove identity (*id.* at p. 1329).

Defendant contends his case is unlike those cited because his prior crimes were not committed close in time to the current offense and he previously robbed people engaged in the public trade of goods and services and not drug dealers. He further contends the similarities are those found in "virtually every robbery," in that defendant robbed people he did not know with a female companion and a gun. We disagree.

First, the long passage of time is explained by defendant's extended incarceration between the offenses. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1287 [noting that the defendant had been incarcerated much of the time between the prior misconduct and the

9

charged crimes].) Second, we do not see a meaningful distinction between the professions of defendant's prior victims and his current one. The important aspect is that defendant believed he was robbing people engaged in a trade that provided them with access to money. Finally, in all of defendant's robberies, he gained access to his victims' place of business under the guise of innocence before holding his victims at gunpoint and demanding property. He attempted to remove their means of communication by either tying them up or taking their phones, rendering them helpless and without the ability to promptly report the crimes. He did all of these offenses with a female companion, seeming to initially provide comfort to his victims by presenting an innocent-looking coconspirator or someone who knew the victim. That these characteristics may be somewhat common among other robberies is of no consequence. It is enough that it appears defendant had a common plan during these offenses, the plan "need not be distinctive or unusual." (*People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 402-403.) Given these similarities, we conclude the trial court did not abuse its discretion in finding the evidence admissible to show common scheme or plan.

Despite the similarities between defendant's crimes, he relies on *Bowen* to argue that his intent was not at issue and the evidence should not have been admitted on that basis. (*Bowen v. Ryan* (2008) 163 Cal.App.4th 916.) In *Bowen*, a civil case, a dentist who had treated as many as 45,000 patients during his 28-year career was accused of choking a patient in order to give him an injection and then shoving him against a wall. (*Id.* at pp. 918, 925.) The patient sought to admit nine other instances of the dentist acting improperly to show the dentist's intent and common scheme of being violent toward uncooperative patients. (*Id.* at pp. 921-924.) We held the evidence was not admissible to prove intent: "[P]laintiff contended that defendant put his arm against his neck and choked him, and then shoved him against a wall. Had defendant conceded doing these acts but sought to defend them as occurring by accident or otherwise, evidence of uncharged acts might have been admissible to establish his intent. [Citation.]

10

But that is not the case. Instead, defendant denied choking or shoving plaintiff. Because the act was not conceded or assumed, defendant's intent was not at issue." (*Id.* at p. 926.)

*Bowen*, however, was a civil case. Thus, the plaintiff did not have the burden of proving intent beyond a reasonable doubt. In this criminal case, *Scott* is controlling. (*People v. Scott* (2011) 52 Cal.4th 452.) " '[A] fact -- like defendant's intent -- generally becomes "disputed" when it is raised by a plea of not guilty or a denial of an allegation. [Citation.] Such a fact remains "disputed" until it is resolved.' [Citation.] [¶] A defendant may seek to limit the admissibility of . . . evidence by stipulating to certain issues. However, defendant did not do so here." (*Id.* at p. 471.) Here, the prosecution had the burden of showing defendant intended to permanently deprive the owner of property or remove it from him for an extended period of time. (CALCRIM No. 1600.) Defendant's prior acts tended to prove he knew the consequences of his actions, and thus acted with the required intent when committing the actions. (See *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The court did not abuse its discretion under Evidence Code section 1101, subdivision (b).

To the extent defendant argues the evidence should have been excluded because its relevance was outweighed by its prejudicial effect, that argument also lacks merit. Evidence is inadmissible under Evidence Code section 352, "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Evidence is unduly prejudicial if it uniquely tends to evoke an emotional bias against a party as an individual, or if it would cause the jury to prejudge a person or cause on the basis of extraneous factors. (*People v. Foster*, *supra*, 50 Cal.4th at p. 1331.) Defendant points to the emotional testimony of his prior victims as being unduly prejudicial. We disagree.

While both witnesses described the experiences as traumatic, the record does not reflect that the testimony was "fraught with emotion," as defendant contends. The

11

testimony was relatively short and relayed the facts of defendant's prior robberies. There was no indication the witnesses were crying or unable to relate what happened to them due to their trauma. The store clerk did not want to look at defendant, but even then, this was but one statement before she was excused from the witness stand. The trauma these victims experienced was apparent from the facts they related, their statement that the incident was traumatic added little to their overall testimony. Neither were the facts of the prior robberies so severe as to bias the jury. Defendant's prior conduct was similar to his current offense, all of which were traumatic to his victims, and his prior crimes did not involve physical injury leading to potential jury bias. Further, the jury knew defendant's age when committing these prior crimes and the extent to which he was punished, ensuring it would not punish him for committing these past robberies. On balance, the testimony of defendant's prior victims was not unduly prejudicial and the trial court did not abuse its discretion under Evidence Code section 352. Accordingly, we similarly reject defendant's argument that the court's ruling violated his right to due process. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 998 [proper application of the rules of evidence ordinarily does not violate due process].)

B

*The Court Did Not Abuse Its Discretion By Excluding Evidence Of*

*A Prior Relationship Between The Prosecutor And A Witness*

Defendant next challenges the trial court's exclusion of evidence under Evidence Code section 352 that the prosecutor knew Wade's mother because he believes the evidence was relevant to show her bias for the prosecution and it served to explain why Wade received a favorable plea deal. This evidence was not outweighed, defendant argues, by its undue prejudice. We disagree.

12

## 1

### *Background*

The prosecutor moved to exclude evidence that he knew Wade's mother, who testified at trial. The prosecution's written motion in limine provides, "The People make a motion to exclude under Evidence Code section 352 mention of [Wade's mother's] connection with [the prosecutor]. [She] previously worked with [the prosecutor's] step-mother approximately 10 years ago. During that time, [the prosecutor] met [her] approximately 5 to 10 times when [he] would visit his step-mother at her work. This evidence has no probative value to the current case and can only lead to undu[e] prejudice and confusion of the jury."

Defendant argued for admission of this evidence because it tended to show why Wade received a favorable deal from the prosecution. The court granted the prosecution's motion to exclude the evidence.

At trial, Wade's mother testified to her son's prior drug use and that she had seen defendant socializing with her son on one occasion in her garage. She also testified that she did not sign the check Wade made out to defendant for $200 from her bank account and she did not give Wade permission to do so. Wade testified as to the facts leading up to the robbery, including the planning and execution of it. He also testified that he wrote the check to defendant for $200 without his mother's permission. Wade testified pursuant to a plea bargain, wherein he promised to tell the truth in exchange for his plea of guilty to being an accessory to a felony. Part of the plea bargain was that he would not serve any jail time but would remain on probation for five years.

## 2

### *Discussion*

Evidence Code section 780 states in relevant part: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his

testimony at the hearing, including but not limited to any of the following: [¶] . . . [¶] (f) The existence or nonexistence of a bias, interest, or other motive."

The state of mind of a witness as to bias, prejudice, interest involved, and hostility or friendship toward a party are all subjects for investigation at the trial of a case. (*People v. Payton* (1939) 36 Cal.App.2d 41, 55.) Counsel should be allowed wide latitude in developing facts which show bias, prejudice, or interest on the part of a witness and which therefore affect the credibility of the witness. (*People v. Avelar* (1961) 193 Cal.App.2d 631, 634.) On cross-examination, it is permissible to show the fact of relationship, fraternal or otherwise, existing between the witness and the party in whose interest he or she is called, as tending to affect his or her credibility. (*People v. Pickens* (1923) 61 Cal.App. 405, 407-408.)

Given the wide latitude afforded to counsel to establish a witness's credibility, defendant argues it was error for the trial court to exclude evidence that Wade's mother had a "personal relationship" with the prosecutor. We disagree. While defendant characterizes the prosecutor's acquaintance with Wade's mother as a "relationship," that "relationship" merely consisted of five to 10 meetings a decade before the trial. The record reflects the two may have had limited conversation when the prosecutor visited his stepmother at work; however, that does not indicate the prosecutor knew Wade's mother beyond a few casual and brief conversations. This limited interaction was not of a serious or personal nature as defendant would have us believe. Also, her testimony held little relevance toward defendant's charged crimes. Indeed, her testimony was offered only to establish background regarding her son's drug use and that she did not write the $200 check to defendant.

Further, there was much risk of undue prejudice to the prosecution. Defendant argues the "relationship" could explain why Wade received a favorable plea deal, and in turn be relevant to Wade's mother's and Wade's credibility. The fact a plea deal exists and the conditions of it are relevant to assess credibility. (*People v. Bonilla* (2007) 41

14

Cal.4th 313, 337 [" ' "full disclosure of any agreement affecting the witness is required to ensure that the jury has a complete picture of the factors affecting the witness's credibility" ' "].)  There is no indication that the 10 brief conversations the prosecutor had with Wade's mother a decade before trial was the motivation behind Wade's plea deal, which the trial prosecutor did not approve.  The plea deal was approved by a different prosecutor.  To admit evidence that allows the jury to make such an inference, when the evidence supporting it is weak, and when the jury already knew the terms of the deal to access witness credibility, would result in undue prejudice.

## C

### *There Was No Cumulative Error*

Defendant seeks reversal based on cumulative error.  "Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial."  (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.)  Here, we concluded there was no error.  Accordingly, there was no error to cumulate.

## II

### *Sentencing Claims*

Defendant raises multiple sentencing errors.  He contends his case should be remanded because the trial court did not know of its discretion to sentence him to concurrent sentences but instead thought it was required by statute to sentence him consecutively to those convictions not stayed pursuant to section 654.  He also contends the court's imposition of 25 years to life on his felon in possession of a firearm conviction was unauthorized because the prosecutor did not plead an exception to the sentencing scheme for nonviolent and nonserious offenses as required by the Three Strikes Reform Act.  Finally, he contends recent changes to the law governing gun and serious felony conviction enhancements require remand so that the trial court can exercise its newly granted discretion when deciding whether to sentence him to these enhancements.  We agree.

15

A

*The Trial Court Had Discretion To Sentence*

*Defendant's Serious And Violent Felonies Concurrently*

Defendant contends the trial court erred by sentencing him consecutively to his three strike convictions because it did not understand it had the discretion to sentence him concurrently.[7]  We agree.

We recently accepted defendant's arguments in *People v. Gangl* (2019) 42 Cal.App.5th 58.  There, we agreed with our colleagues in Division One of the First Appellate District and held Proposition 36's amendments to section 1170.12, subdivision (a)(7) (and by implication 667, subdivision (c)(7)) resulted in the trial court having discretion to sentence a defendant's serious and violent felony convictions that occurred on the same occasion and arose out of the same facts concurrent to each other and then consecutive to all other convictions, including nonserious and nonviolent felonies and misdemeanor convictions.  (*Gangl*, at pp. 69-71; *People v. Torres* (2018) 23 Cal.App.5th 185, 201.)  Here, defendant was convicted of serious and violent offenses, thus the trial court had discretion to sentence him concurrently to those convictions.[8]

---

[7]     The People argue defendant forfeited this claim on appeal by not objecting in the trial court.  We disagree.  The trial court thought it was required by statute to sentence defendant consecutively, meaning that any objection by defendant would have been overruled by the trial court as meritless.  (*People v. Welch* (1993) 5 Cal.4th 228, 237 ["[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile"].)

[8]     We note the trial court's discretion is also tempered by section 654, which it utilized in this instance to stay the sentence on defendant's conviction for burglary and the attached firearm enhancement.

B

*Defendant's Third Strike Sentence For Being A Felon In*

*Possession Of A Firearm Violates Due Process*[9]

Defendant contends the trial court erred by imposing a 25-year-to-life sentence on his being a felon in possession of a firearm conviction because the information never alleged this offense was committed pursuant to an exception to the Three Strikes Reform Act. The People agree, as do we, that defendant was not adequately notified of the prosecution's intent to seek a third strike sentence for his being a felon in possession of a firearm conviction.

Our Supreme Court recently addressed a similar issue in *Anderson*. There, the defendant was charged with first degree murder and five counts of robbery, among other crimes. (*People v. Anderson*, *supra*, 9 Cal.5th at pp. 950-951.) The operative information alleged two personal use firearm enhancements on each of the robbery counts. The information also alleged a vicarious use firearm enhancement on the murder charge. (*Ibid*.) The trial court instructed the jury and approved verdict forms on the vicarious use enhancement as to the robbery counts, even though the enhancements had not been alleged as to those counts. (*Id.* at p. 951.) The jury found the enhancements true, and the trial court sentenced the defendant to a drastically increased sentence as required by the vicarious use enhancements. (*Id.* at pp. 951-952.)

Our Supreme Court concluded the trial court erred. It held the information failed to comply with the relevant statutory pleading requirements and principles of due process underlying them. (*People v. Anderson*, *supra*, 9 Cal.5th at pp. 953-955.) As to the

---

[9] We previously decided this issue against defendant. (*People v. Schafer* (Feb. 4, 2020, C083560) [nonpub. opn.].) Our Supreme Court granted review on March 16, 2020, S261258, and deferred briefing of the matter pending *People v. Anderson* (2020) 9 Cal.5th 946.

pleading requirements of the statute, it provided that for the enhancement to apply, "the existence of any fact required [by the relevant provision] shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 12022.53, subd. (j); see *Anderson*, at pp. 953, 955.) As to due process, our Supreme Court concluded the vicarious firearm discharge allegation as to the murder court was insufficient to provide fair notice the prosecution would seek such enhancements on the robbery counts. (*Anderson*, at p. 957.) Our Supreme Court was careful to note that it did "not mean to suggest that an information that fails to plead the specific numerical subdivision of an enhancement is necessarily inadequate. [Citation.] Neither the relevant statutes nor the due process clause requires rigid code pleading or the incantation of magic words. But the accusatory pleading must adequately inform the defendant as to how the prosecution will seek to exercise its discretion." (*Id.* at p. 957.)

The statutory provisions at issue here are contained within the Three Strikes Reform Act, as set forth in sections 667 and 1170.12. Those sections require that when the current felony is not a serious or violent felony, the prosecutor must plead and prove an enumerated disqualifying factor to invoke the greater penalty of an indeterminate three strike term. (§§ 667, subd. (e)(2)(A), (C), 1170.12, subd. (c)(2)(C).) Here, the disqualifying factor was that "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

The information contained firearm allegations on all counts except defendant's being a felon in possession of a firearm charge. It further did not contain an allegation defendant possessed the firearm as a felon pursuant to a disqualifying factor exposing him to a harsher sentence. Indeed, as the People point out, the first time a third strike term was contemplated for that conviction was in the amended probation report after

18

defendant was found guilty. Thus, under *Anderson*, defendant did not have adequate statutory notice of the possibility he could be sentenced to a third strike term nor did the information adequately inform him as to how the prosecution sought to exercise its discretion. Accordingly, defendant's third strike sentence on this count violates due process.

C

*While On Remand, The Trial Court Shall Also Exercise*

*Its Newly Granted Discretion When Sentencing Defendant To The*

*Gun Enhancements And The Prior Serious Felony Conviction Enhancements*

Defendant contends his case should be remanded for the trial court to exercise its newly granted discretion when sentencing him to the gun and prior serious felony conviction enhancements. The People contend that while the amendments apply to defendant, remand would be futile because it is clear the trial court would not sentence defendant any differently. We agree with the parties that the recent amendments apply to defendant. (See *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091.) We further agree with defendant that his case must be remanded for the court to exercise its newly granted discretion.

As it pertains to defendant's firearm enhancements, the People's argument is moot because we are remanding defendant's case for resentencing for other reasons. The amendment enacted by Senate Bill No. 620 allows for a court to exercise its discretion whenever a defendant's case is remanded for resentencing. (§ 12022.53, subd. (h).) Because we have concluded defendant's case should be remanded for the trial court to exercise its informed discretion when sentencing him to his three strike offenses, it is appropriate for the court to also consider its newly granted discretion when sentencing defendant to his firearm enhancements.

The amendments enacted by Senate Bill No.1393, however, do not include the same directive when a defendant's case is already remanded for resentencing. (§ 667,

subd. (f)(2).)  In any event, we conclude remand is appropriate for the trial court to consider its newly granted discretion under Senate Bill No. 1393.  Generally, when the record shows the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing.  (*People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1895.)  While the trial court made statements indicating it believed defendant fell within the spirit of the three strikes law, it did not make statements indicating what it would have done had it known it had discretion to strike defendant's prior serious felony conviction enhancements under Senate Bill No. 1393, which carried a much lower term of imprisonment.  Accordingly, we must remand defendant's case for the trial court to exercise its informed discretion when sentencing him to these enhancements.

### DISPOSITION

Defendant's case is remanded for resentencing.  The trial court shall exercise its informed discretion when sentencing defendant to his convictions as well as the firearm and prior serious felony conviction enhancements.  The trial court shall not impose a third strike sentence on defendant's conviction for being a felon in possession of a firearm, as that sentence violates due process.  When preparing the abstract of judgment, the trial court shall include defendant's conviction for burglary and the fact that the sentence was stayed pursuant to section 654 before forwarding the abstract of judgment to the Department of Corrections and Rehabilitation.

/s/
Robie, J.

I concur:

/s/
Blease, Acting P. J.

20

Krause, J., Concurring and Dissenting.

I concur in the majority opinion except for part II.A of the Discussion.  To that part, I dissent for the reasons articulated in my dissenting opinion in *People v. Gangl* (2019) 42 Cal.App.5th 58 (conc. & dis. opn. of Krause, J.).


                                    /s/ _____
                                    Krause, J.